BENNET D. ZUROFSKY, ATTORNEY AT LAW
17 Academy Street – Suite 1201
Newark, New Jersey 07102
Phone: 973-642-0885
Fax:   973-642-0946
E-mail:bzurofsky@zurofskylaw.com
*Attorneys for Relator*

Mark Allen Kleiman (CSB #115919) *(pro hac vice pending)*
Pooja Rajaram (CSB # 241777) *(pro hac vice pending)*
LAW OFFICES OF MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 902922
310-306-8094
310-306-8491 (fax)
mkleiman@quitam.org
prajaram@quitam.org
*Attorneys for Relator (Pro Hac Vice Pending)*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------X

[UNDER SEAL],

    Relator,

    v.

[UNDER SEAL],

    Defendants.

------------------------------------------------------X

Civil Action: _____

FILED UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730 (b)(2)

## COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT

### JURY TRIAL DEMANDED

BENNET D. ZUROFSKY, ATTORNEY AT LAW
17 Academy Street – Suite 1201
Newark, New Jersey 07102
Phone: 973-642-0885
Fax:    973-642-0946
E-mail:bzurofsky@zurofskylaw.com
*Attorneys for Relator*

Mark Allen Kleiman (CSB #115919) *(pro hac vice pending)*
Pooja Rajaram (CSB # 241777) *(pro hac vice pending)*
LAW OFFICES OF MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 902922
310-306-8094
310-306-8491 (fax)
mkleiman@quitam.org
prajaram@quitam.org
*Attorneys for Relator (Pro Hac Vice Pending)*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel*, YNKDY 3,<br><br>      Relator,<br><br>    v.<br><br>DermOne, LLC; DermOne Dermatology Associates of New Jersey, LLC; Westwind Investors, LP; Steven Pohlmeyer; Nathan Horvath; Joseph Kamelgard; Accredited Dermatology of New Jersey; and Does 1-10,<br><br>      Defendants. | Civil Action: _____<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 (b)(2) |

------------------------------------------------------X

## COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT

## JURY TRIAL DEMANDED

1

Relator YNKDY 3, a California corporation located at 2907 Stanford Avenue, Venice, CA 90202, brings this action against Defendants identified below in paragraphs 6 - 13 pursuant to the False Claims Act, 31 U.S.C. §3729 et. seq. ("FCA"), seeking treble damages and civil penalties.

1. This case involves an equity firm-owned dermatology practice that has upcoded thousands of Mohs Microsurgery procedures (MMS), stealing millions of dollars from Medicare.

I. **JURISDICTION, VENUE, PARTIES**

2. This action arises under the FCA, as amended, 31 U.S.C. §§ 3729-33, and under common law theories of payment by mistake of fact and unjust enrichment. This Court has jurisdiction over this action under 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1345 and 1367(a).

3. Venue is proper in this District of New Jersey pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

4. This Court may exercise personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) and because Defendants reside and transact business in this District.

5. YNKDY 3 ("Relator") is a California corporation whose principals include at least one person who was a highly placed DermOne insider at the time the information related in this Complaint was learned, and who has direct and personal knowledge of the matters alleged herein. Before this suit was filed, Relator's principal and agent (Relator's Principal / Agent and Relator are collectively and individually referred to as "Relator") voluntarily and on their own initiative contacted federal law enforcement and submitted evidence of defendants' wrongdoing.

6. Defendant DermOne, LLC, is a private corporation incorporated in the State of Delaware, with its principal place of business located at 668-670 Broadway, Bayonne, NJ 07002. It's

2

CEO, Heather Helle, manages the company from her office located at Four Tower Bridge, 200 Barr Harbor Drive, Suite 200, West Conshohocken, PA 19428.

7.  Defendant DermOne Dermatology Associates of New Jersey, located at 111 W. Water Street, Toms River, NJ 08753, is a private corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

8.  Westwind Investors, LP, located at 917 Tahoe Boulevard, Suite 200, Incline Village, NV 89451, is a private equity firm which owns and controls DermOne, LLC and its New Jersey affiliate, DermOne Dermatology Associates of New Jersey.

9.  Nathan Horvath is an individual, located at 917 Tahoe Boulevard, Suite 200, Incline Village, NV 89451, who exercised control over DermOne, LLC both as an investor in and employee of Westwind LP, as an investor in DermOne, LLC, and as the temporary CEO or CFO of DermOne, LLC.

10.  Steven Pohlmeyer is an individual, located at 111 W. Water Street, Toms River, NJ 08753, who exercised control over DermOne, LLC both as an investor in and employee of Westwind LP, as an investor in DermOne, LLC, and as an operations officer of DermOne, LLC.

11.  Joseph Kamelgard is a physician, located at 111 W. Water Street, Tomas River, NJ 08753, affiliated with DermOne Dermatology Associates of New Jersey with an office in Toms River, New Jersey.

12.  Accredited Dermatology of New Jersey, located at 111 W. Water Street, Toms River, NJ 08753, is a Delaware corporation which employed Kamelgard at times material to this complaint, and which, on his behalf, submitted false and fraudulent claims to Medicare.

13. Each and every one of the fictitiously named Doe Defendants is an individual or corporation which has submitted or caused the submission of false claims, acting in concert with one or more of the other defendants.

14. Relator is informed and believes and based thereon alleges that each and every one of the defendants has acted as the agent, director, or co-venturer of every other defendant to submit or cause the submission of false claims to the United States.

## II. LAW

### A. The Federal False Claims Act

15. The FCA provides, in pertinent part, that a person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains . . . .

31 U.S.C. § 3729(a)(1).[1]

---

[1] The FCA was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), enacted May 20, 2009. Sections 3729(a)(1) of the prior statute applies to conduct that occurred before FERA was enacted, and Section 3729(a)(1)(A) of the revised statute applies to conduct after FERA was enacted. Section 3729(a)(1)(B) is applicable to all claims in this case by virtue of Section 4(f) of FERA.

16. For purposes of the FCA,

(1) the terms "knowing" and "knowingly"—

(A) mean that a person, with respect to information—
(i) has actual knowledge of the information;
(ii) acts in deliberate ignorance of the truth or falsity of the information; or
(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

17. An overpayment is a payment by a federal entity to a provider or supplier in excess of what was due and payable. An overpayment may include payment for non-covered items or services including services that are not reasonable and necessary in accordance with the Medicare rules. An overpayment may be received through an innocent billing error or through a mistake of the contractor. 42 U.S.C. Section 1320a -7k(d)(1) warns that "returning the overpayment . . . is an obligation (as defined in 3729(b)(3) of title 31 for purposes of section 3729 of such title."

18. As of May 24, 2010, the effective day of the legislation that established subsection 7k(d)(1), each day that a provider retains an overpayment, it is violating the Federal False Claims Act.

19. A refusal to calculate or estimate the amount of overpayment refunds owed is a separate violation of 31 U.S.C. §3729(b)(3) of the False Claims Act.

5

### B. The Medicare Program

#### 1. The Medicare Program

20. In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426-1. CMS administers the Medicare program. At all times relevant to this complaint, CMS contracted with private contractors, referred to as "fiscal intermediaries," "carriers," and Medicare Administrative Contractors ("MACs"), to act as agents in reviewing and paying claims submitted by health care providers. 42 U.S.C. §§ 1395h, 1395u; 42 C.F.R. §§ 421.3, 421.100, 421.104. The Medicare program consists of four parts: A, B, C, and D. Defendants billed Medicare under Part B, which covers certain medical services, such as Mohs Microsurgery (MMS) furnished by physicians and other providers and suppliers. 42 U.S.C. § 1395k(a)(2)(B).

21. To participate in the Medicare program as an enrollee, physicians such as Kamelgard were required to submit a Medicare Enrollment Application, Form CMS-855I. Medicare regulations require providers and suppliers to certify that they meet, and will continue to meet, the requirements of the Medicare statute and regulations. 42 C.F.R. § 424.516(a)(1).

22. Either Kamelgard himself or an authorized official of DermOne must sign the "Certification Section" in Section 15 of Form CMS-855I, which requires Kamelgard to "abide by the Medicare laws, regulations, and program instructions that apply to me or to the organization listed in 4A of this application . . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . ."

6

23. Relator is informed and believes and based thereon alleges that either Kamelgard or authorized officials for DermOne signed the certification statement in Section 15 of Form CMS-855I, indicating that they understood that the laboratory was required to comply with Medicare laws, regulations, and program instructions.

24. The National Provider Identifier ("NPI") is a standard and unique health identifier for health care providers. All providers and practitioners must have an assigned NPI number prior to enrolling in Medicare.

25. To obtain Medicare and Medicaid reimbursement for certain outpatient items or and services, providers and suppliers submit a claim form known as the CMS 1500 form ("CMS1500") or its electronic equivalent known as the 837P form. The information the provider or supplier includes on a CMS 1500 are certain five-digit codes, including Current Procedural Terminology Codes ("CPT codes") and Healthcare Common Procedure Coding System ("HCPCS") Level II codes, that identify the services rendered and for which reimbursement is sought, and the unique billing identification number of the "rendering provider" and the "referring provider or other source."

26. **All** of the CPT codes for MMS require that the physician performing the MMS serves both as surgeon and pathologist, performing both the excision and the histologic examination of the specimen or specimens.

27. If the physician is not functioning as both the surgeon and the pathologist, the proper codes to be billed for surgical excision are 11640, 11641, 11642, 11643, 11644, 11645, and

7

11646, and separate codes 88305 by the physician (usually a pathologist) performing the histologic examination.

28.     Medicare pays much more for the MMS CPT codes (17311, 17312, 17313, 17314, and 17315) than it does for separate excision and histologic examination codes. MMS codes are expressly and clearly identified as distinct because the MMS technique is substantially more complex, labor intensive, and time intensive compared to the non-MMS excision codes.

2. **Local Coverage Determinations**

29.     The U.S. Department of Health and Human Services (HHS) and the Centers for Medicare and Medicaid Services (CMS) promulgate federal regulations and National Coverage Determinations (NCDs) upon which Medicare Fiscal Intermediaries/carriers rely to make coverage determinations for claims for medical services and items provided to beneficiaries. HHS adopts NCDs to exclude certain items and services from coverage on a national level that are not reasonable and necessary under HHS' interpretation of the Medicare Act. Federal regulations and NCDs are binding on all Medicare Administrative Contractors (MACs) nationwide. (42 U.S.C. 1395ff(f)(1)(B).

30.     In the absence of a NCD, MACs, as agents of the federal government, were authorized to establish Local Medical Review Polices (LMRPs) which were later supplanted by Local Coverage Determinations (LCDs).

31.     When a service is not governed by a NCD, the MAC may issue an LCD identifying indications and limitations of coverage and payment. *See*, 42 USC 1395kk-1(a)(4).

8

32. LCDs establish specific criteria for initial and continued coverage of a service or item, as well as identifying circumstances under which Medicare will deny coverage for a service or item as not reasonable and necessary. *See*, 42 C.F.R. §400.202.

33. The Social Security Act defines Local Coverage Determination as:

> B) Definition of local coverage determination.—For purposes of this section, the term "local coverage determination" means a determination by a fiscal intermediary or a carrier under part A or part B, as applicable, respecting whether or not a particular item or service is covered on an intermediary–or carrier–wide basis under such parts, in accordance with section 1862(a)(1)(A). 42 U.S.C. § 1395ff (f)(2)(B).

34. Each MAC publishes and provides LCDs to the providers in its region. The MAC responsible for administering the Medicare program and publishing LCDs in New Jersey is Novitas.

35. Medicare does not pay for medical treatments that are not reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A), 42 CFR § 411.15(k).

36. CMS publishes a Medicare Program Integrity Manual which instructs the MACs that when determining whether a treatment is "reasonable and necessary" under section 1395(y)(a)(1)(A), they may apply the so-called "reasonably feasible and medically appropriate" least costly alternative policy. (Chapter 13.4.A (Rev. 71, April 9, 2004). Chapter 13 of the Medicare Program Integrity Manual provides the following detailed information regarding LCDs:

> **13.1.3 - Local Coverage Determinations (LCDs)**
> **(Rev. 165, Issued: 10-06-06, Effective: 09-11-06,**
> **Implementation: 10-26-06)**
>
> Section 522 of the Benefits Improvement and Protection Act (BIPA) created the term "local coverage determination" (LCD). An LCD is a decision by a Medicare administrative contractor (MAC), fiscal

9

>intermediary or carrier whether to cover a particular service on a MAC-wide, intermediary wide or carrier-wide basis in accordance with Section 1862(a)(1)(A) of the Social Security Act (i.e., a determination as to whether the service is reasonable and necessary). The difference between LMRPs and LCDs is that LCDs consist of only "reasonable and necessary" information, while LMRPs may also contain benefit category and statutory exclusion provisions.

37. In 2008 Novitas issued LCD L27503 for Mohs Micrographic Surgery. The LCD states, *inter alia*:

>"Mohs micrographic surgery is reserved for the surgeon who removes the lesion **and** interprets the pathology slides." (Emphasis added.)

>"Medicare will consider reimbursement for MMS if **all of the following are met:** ... [t]he physician performing the MMS is trained and skilled in MMS techniques **and pathology identification.**" (Emphases added.)

The LCD goes on to warn that under published Medicare guidelines, a service is not reasonable and necessary unless it is also "safe and effective", and that to be safe and effective it must be, *inter alia*, "furnished by qualified personnel."

### III. PERTINENT FACTS

38. Relator is familiar with Mohs training. It consumes either an entire one-year fellowship or one year of a full three-year dermatology residency. Adequate training requires supervision of perhaps 500 cases.

39. Joseph Kamelgard is a cardiothoracic surgeon who practices as a dermatologist. He is not a board certified dermatologist, has never undertaken a residency in dermatology, and has never been trained in the histologic examination of pathology slides for diagnosis of skin cancer.

10

Kamelgard has never completed a Mohs fellowship and on information and belief, is alleged not to have been trained to read Mohs slides during his surgical residency.

40. Notwithstanding this lack of qualifications Kamelgard, through DermOne, has submitted or caused the submission of claims to Medicare for Mohs Microsurgery, (CPT Codes 17311, 17312, 17313, 17314, and 17315 when in truth and in fact, the histologic examinations are performed by another physician.

41. That other physician is Peter Lapis. Lapis never performs surgery on any of these patients. Although Dr. Lapis is indeed qualified to conduct histologic examinations of the pathology slides, since the excisions are performed by one doctor (Kamelgard) and the examination by another (Lapis), this is precisely what Medicare forbids being billed under the Mohs Microsurgery codes.

42. Relator is informed and believes and based thereon alleges that until this illegality was pointed out to DermOne's management, Kamelgard wrote his surgical notes and Lapis or another slide reader then told Kamelgard what to write up with respect to the results of the histologic examination.

43. Relator is informed and believes and based thereon alleges that since the illegal nature of this billing was pointed out, Dr. Kamelgard had in effect begun informal training in slide reading, as prior to that he would never examine the slide. DermOne's senior management has stated that now, even though Kamelgard still does not – and indeed can not – perform the histologic examination, at least, Kamelgard writes up the findings of Dr. Lapis or some other dermatopathologist in his own handwriting, and a dermatopathologist is always present to confirm what the slides show.

44.  Despite his lack of qualifications, Kamelgard bills for approximately 2,400 Mohs procedures per year, approximately one half of which are for Medicare beneficiaries.

45.  Kamelgard has engaged in these practices since he first joined Accredited Dermatology, in 2009.  In or about 2012 Accredited Dermatology was acquired by DermOne LLC, and has since operated as DermOne Dermatology Associates of New Jersey.

46.  Medicare pays approximately $1,500 more for a Mohs procedure than it does for a comparable separate excision and histologic examination.

47.  Thus, the damages to the United States arising from the Defendants' submission of upcoded claims to Medicare and Medicaid is approximately $1.8 million per years since Kamelgard began this practice.

## COUNT I

### (Federal False Claims Act: Presentation of False Claims)

### (31 U.S.C. § 3729(a)(1) and (a)(1)(A))

48.  Relator repeats and repleads and hereby incorporates by reference paragraphs 1 through 48 inclusive set out above as though fully set forth herein.

49.  Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the United States and New Jersey Medicaid.

50.  Said claims were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

## COUNT II

**(Federal False Claims Act: False Statements Material to False Claims)**

**(31 U.S.C. § 3729(a)(1)(B))**

51. Relator repeats and repleads and hereby incorporates by reference paragraphs 1 through 48 inclusive set out above as though fully set forth herein.

52. Defendants knowingly made, used, and caused to be made or used, false records or statements — i.e., false statements regarding compliance and coverage for its services and false statements on forms CMS-855I, and CMS-1500—to get false or fraudulent claims paid and approved by the United States.

53. Defendants; false certifications and representations were made to get claims paid even though the histology examination required by these codes was not performed by the physician who billed for the Mohs procedures. and payment of the false or fraudulent claims was a reasonable and foreseeable consequence of the Defendants' statements and actions.

54. The false certifications and representations made and caused to be made by Defendant were material to the United States' and New Jersey Medicaid's payment of the false claims.

55. Said false records or statements were made with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

13

## COUNT III

### (Failure to Return Overpayments False Claim)

### (Federal False Claims Act; 31 U.S.C. § 3729(b)(e))

56. Relator repeats and repleads and hereby incorporates by reference paragraphs 1 through 48 inclusive set out above as though fully set forth herein.

57. Defendants, and each of them have known that they had received overpayments under Medicare. DermOne's former compliance officers have known this.

58. Defendants have nonetheless refused to conduct audits that are within their power to conduct in the full knowledge that those audits would reveal the precise amount of overpayment refunds due Medicare because each of the previously enumerated false billing schemes.

59. Defendants' refusal to calculate or estimate the amount of overpayment refunds owed is a separate violation of 31 U.S.C. §3729(b)(3) of the False Claims Act.

### PRAYER FOR RELIEF

WHEREFORE, the Relator demands and prays that judgment be entered in favor of the United States against Defendants as follows:

1. For the amount of the damages to the United States, trebled as required by law, and such civil penalties as are authorized by law, together with all such further relief as may be just and proper;

2. For the Relator, the maximum amount of the Relator's share allowed by law;

3. Reimbursement for all reasonable expenses that Relator incurred in connection with this action;

4. An award of reasonable attorneys' fees and costs; and

5. Such further relief as this Court deems just and proper.

Respectfully submitted,

Date: April 7, 2016

*[signature]*

Bennet D. Zurofsky, Attorney at Law
NJ Atty ID # 024751979
17 Academy Street – Suite 1201
Newark, New Jersey 07102
Phone: 973-642-0885
Fax: 973-642-0946
E-mail: bzurofsky@zurofskylaw.com

Attorneys or Relator YNKDY 3

Dated: April 7, 2016

LAW OFFICES OF MARK ALLEN KLEIMAN

*[signature]*

Mark Allen Kleiman (CSB #115919)
*(pro hac vice pending)*
Pooja Rajaram (CSB # 241777)
*(pro hac vice pending)*
2907 Stanford Avenue
Venice, CA 902922
310-306-8094
310-306-8491 (fax)
mkleiman@quitam.org
prajaram@quitam.org

Attorneys for Relator YNKDY 3
(*pro hac vice* pending)

## DEMAND FOR JURY TRIAL

The Relator demands a jury trial in this case.

Date: April 7, 2016

Respectfully submitted,

*/s/ Bennet D. Zurofsky*

Bennet D. Zurofsky, Attorney at Law
NJ Atty ID # 024751979
17 Academy Street – Suite 1201
Newark, New Jersey 07102
Phone: 973-642-0885
Fax:    973-642-0946
E-mail: bzurofsky@zurofskylaw.com

Attorneys or Relator YNKDY 3

Dated: April 7, 2016

LAW OFFICES OF MARK ALLEN KLEIMAN

*/s/ Mark Allen Kleiman*

Mark Allen Kleiman (CSB #115919)
*(pro hac vice pending)*
Pooja Rajaram (CSB # 241777)
*(pro hac vice pending)*
2907 Stanford Avenue
Venice, CA 902922
310-306-8094
310-306-8491 (fax)
mkleiman@quitam.org
prajaram@quitam.org

Attorneys for Relator YNKDY 3
*(pro hac vice* pending)

16

## CERTIFICATION OF SERVICE

The undersigned certifies that on April 8, 2016 a copy of the foregoing **COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT - JURY TRIAL DEMANDED** was placed in the United States Mail, Certified Mail/Return Receipt Requested, first class, postage prepaid, addressed to:

| | |
|---|---|
| Hon. Loretta Lynch<br>Attorney General<br>U.S. Department of Justice<br>10th & Constitution Ave., NW<br>Washington, DC 20530 | Jacob T. Elberg, Esq.<br>Chief, Health Care & Government Fraud Unit<br>United States Attorney's Office<br>District of New Jersey<br>970 Broad Street, 7th Floor<br>Newark, NJ 07102<br>Phone: (973) 645-3987<br>Jacob.Elberg@usdoj.gov |

/s/ Mark Allen Kleiman

MARK ALLEN KLEIMAN

17